United States Court of Appeals
Fifth Circuit

**F I L E D**

July 14, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-41734

_____


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

FRANK ALEXANDER LYNCH,

Defendant - Appellant.


Appeal from the United States District Court
For the Eastern District of Texas
Sherman Division


Before JOLLY, JONES and BARKSDALE, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Frank Alexander Lynch pleaded guilty to being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1). As an armed career criminal, Lynch was subject to a 15-year mandatory minimum sentence under 18 U.S.C. § 924(e)(1). The district court sentenced Lynch to a 210-month term of imprisonment and ordered the prison term to run consecutively to the state sentence that Lynch was serving based on the same course of conduct. Lynch argues that the district court erred in failing to apply U.S.S.G. § 5G1.3(b), which required a federal sentence to run concurrently with an

undischarged state sentence if the state sentence resulted from "offense(s) that have been fully taken into account in the determination of the offense level" for the federal offense.[1] Because we hold that section 5G1.3(b) applies to this case, we reverse the imposition of Lynch's sentence and remand for resentencing.

Lynch's federal and state convictions both arise out of the same series of events. On February 22, 2002, police officers stopped Lynch in McKinney, Texas, for traveling too close to another vehicle on U.S. Highway 75. As the officers approached Lynch's vehicle, they observed him reach toward his waist area and then look into his rearview mirror. Before the officers reached the car, Lynch accelerated and sped away. A chase ensued, during which Lynch ran two stop signs, drove the vehicle the wrong way on a one-way street, jumped a curb, and finally drove his car into a creek bed. Lynch then left the vehicle and began to flee on foot. When the officers caught Lynch, they found a loaded revolver lying near him on the ground. Lynch was convicted in state court of evading arrest with a vehicle and was sentenced to two years of imprisonment. The revolver found near Lynch is the subject of the federal indictment at issue in this appeal.

_____

[1] In November 2003, the guideline at issue in this appeal was substantially altered; specifically, the "fully taken into account" language was deleted. See U.S.S.G. § 5G1.3(b) (2003). Neither party argues that the new language applies to this case.

The probation officer assigned a base level of 24 to Lynch's offense. He then calculated a four-level increase for having used or possessed a firearm in connection with another felony offense, namely "driving a stolen 1998 Saturn automobile." Lynch also received a two-level enhancement for obstruction of justice under section 3C1.2 because he had recklessly created a substantial risk of death or serious bodily injury to another during the course of his flight from law enforcement officers. The resulting offense level of 30 is trumped, however, because Lynch qualifies as an armed career criminal under section 4B1.4, which mandates an offense level of 33.[2] After receiving a three-level reduction for acceptance of responsibility, Lynch's total offense level equaled 30.

While a district court's decision to impose a consecutive rather than concurrent sentence is reviewed for abuse of discretion, this court reviews de novo the district court's application of the sentencing guidelines. United States v. Rangel, 319 F.3d 710, 714 (5th Cir. 2001). In addition, issues of guideline interpretation are subject to de novo review. United States v. Mitchell, 366 F.3d 376, 378 (5th Cir. 2004). The probation officer in this case added two levels to Lynch's total offense level, pursuant to section 3C1.2, because Lynch's conduct during his

---

[2] The Guidelines provide that the offense level for an armed career criminal is the greater of the otherwise-applicable offense level (here, 30) or the level mandated by section 4B1.4 (here, 33). See U.S.S.G. § 4B1.4 (2001).

3

flight from officers constituted obstruction of justice. This same conduct formed the basis of Lynch's state conviction for evading arrest. Lynch argues that "the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense." U.S.S.G. § 5G1.3(b) (2001); see also Rangel, 319 F.3d at 714-15; United States v. Bell, 46 F.3d 442, 445-46 (5th Cir. 1995).

The Government observes that because Lynch was subject to a mandatory offense level of 33 under section 4B1.4, the obstruction of justice enhancement made no difference in his ultimate offense level. Under the Government's theory, the conduct forming the basis of the state offense, although considered by the federal court, was not "fully" considered.

While this court has yet to examine the effect of career offender provisions on the application of section 5G1.3(b), two of our sister circuits have recently reached conflicting conclusions on the issue. In United States v. Rouse, 362 F.3d 256 (4th Cir. 2004), the defendant pled guilty to conspiracy to distribute 50 or more grams of cocaine base. Two months earlier, the defendant had pled guilty to distribution of cocaine in state court. Id. at 259. The same quantity of drugs involved in the state conviction was attributed to the defendant for the purpose of calculating his federal offense level. Id. at 263. However, the defendant's offense level was ultimately based on the statutory career offender maximum, not on the drug quantity. Id. The Fourth Circuit

4

concluded that despite this fact, the district court erred in failing to apply section 5G1.3(b).[3] The court reasoned that "[t]he calculation of an offense level based on relevant conduct is a necessary step in applying the career offender guideline." Id. That is, because the career offender level applies only when it is greater than the offense level otherwise applicable, the prior conduct "was in fact taken into account in determining the offense level applicable to" the defendant. Id. (emphasis added).

In United States v. Jackson, 365 F.3d 649 (8th Cir. 2004), the Eighth Circuit reached the opposite conclusion. In that case, the defendant was convicted of unlawfully possessing a firearm. The defendant argued that a prior state conviction, which arose out of the same criminal transaction as his federal conviction, mandated that his federal sentence run concurrent to the undischarged state sentence. Id. at 653. The Eighth Circuit concluded that because the defendant qualified as an armed career criminal, his "base offense level was based only on his status as an armed career criminal and did not take into account the [state crime]." Id. Thus, section 5G1.3(b)'s mandate did not apply.

We agree with the Fourth Circuit's reasoning. The conduct underlying Lynch's state court conviction for evading arrest with a vehicle formed the basis for imposing a Chapter Three

---

[3] Despite the court's conclusion that the district court erred in not applying section 5G1.3(b), the sentence in Rouse was ultimately affirmed under the plain error standard of review. Id. at 263-64. Conversely, this case is governed by the de novo standard of review.

5

enhancement. As the Rouse court noted, "[t]he calculation of an offense level based on relevant conduct is a necessary step in applying the career offender guideline." Rouse, 362 F.3d at 263. That Lynch's ultimate offense level was based on a statutory maximum, and not on the level arrived at after applying chapters two and three of the sentencing guidelines, does not change the fact that the conduct underlying the state court offense was "fully taken into account" in arriving at Lynch's federal offense level.

Additionally, the Eighth Circuit's opinion in Jackson may be distinguishable from the instant case. The Jackson court noted that the defendant's prior state conviction was not used when determining the application of the career offender provision. "[B]ecause [the defendant] had at least three prior felony offenses independent of [the prior state court offenses]," section 5G1.3(b) did not apply. Id. at 654. Thus, under the facts of Jackson, it seems that none of the conduct underlying the defendant's prior state court conviction was considered when calculating his federal sentence. Instead, the court relies primarily on the fact that the prior state offenses were not used when applying the career offender provision. In this case, the conduct underlying Lynch's state court conviction for evading arrest with a vehicle was the basis for a Chapter Three enhancement.

Because Lynch's state offense was "fully taken into account" in determining his federal offense level, the district court erred in failing to apply section 5G1.3(b)'s mandate.

6

However, this does not end our inquiry. "Although subsection (b) is mandatory, . . . the district court retains its discretion to impose a sentence consecutively, even where this guideline applies, by means of a departure." Rangel, 319 F.3d at 715 (quoting Bell, 46 F.3d at 446). Given the district court's error, the sentence imposed constitutes an upward departure from the guidelines. Id. However, the district court did not indicate that it was upwardly departing from the guidelines and did not offer any justifications for the departure. Under similar circumstances, this court in Rangel remanded for appropriate justifications for the departure. A similar result should occur here.[4]

Lynch's sentence is **REVERSED** and the case **REMANDED** to the district court for resentencing in a manner consistent with this opinion.

**REVERSED** and **REMANDED**.

---

[4] The PROTECT Act, enacted on April 30, 2003, requires that when a sentence is imposed as a result of "an incorrect application of the sentencing guidelines," the case should be remanded for resentencing. 18 U.S.C. § 3742(f)(1).

However, the PROTECT Act also prohibits a district court from departing from the guidelines on remand except upon a ground that "was specifically and affirmatively included in the written statement of reasons . . . ." 18 U.S.C. § 3742(g)(2). In this case, the district court did not provide any justification, much less a written one, for the upward departure. However, "[a] departure on grounds made newly-germane as a result of our correction of the sentence can arise only upon resentencing after appeal, and thus could not have been included in the original statement of reasons." United States v. Phipps, 368 F.3d 505, 512-13 (5th Cir. 2004). Because the district court did not technically depart at the initial sentencing, and because we authorize the reconsideration of consecutive sentencing upon remand, section 3742(g)(2) does not apply to this case.